

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203-0506
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Boston Status Line: (866) 408-8075
Boston Direct Dial: (617) 565-4805
TTY (617) 565-3204
FAX (617) 565-3196

Robert Ducheneau                                    CHARGING PARTY
c/o Anita M. Laing
Scott + Scott, LLC
600 B Street, Suite 1500
San Diego, CA  92101

United Parcel Service, Inc.                         RESPONDENT
c/o Hugh F. Murray
Murtha Cullina LLP
CityPlace 1
185 Asylum Street
Hartford, CT  06103-3469

Re:     *Ducheneau v. United Parcel Service, Inc., Charge No. 161-2004-00280C*

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge filed under the Americans with Disabilities Act of 1990 (ADA).

All requirements for coverage have been met.  Charging Party alleged that Respondent discriminated against him because of his disability in violation of the ADA in that Respondent failed to reasonably accommodate him.

Respondent denies the allegations and claims that Charging Party is not a qualified individual with a disability under the ADA and that it could not reasonably accommodate Charging Party due to his medical restrictions that restrict Charging Party from lifting more than 10 lbs.

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that there is a violation of the ADA.  Charging Party is a qualified individual with a disability.  Respondent failed to engage in the interactive process with the Charging Party as required by the ADA; improperly used uniform pretextual job descriptions listing lifting requirements as essential job functions when such lifting requirements were not essential job functions; applied a *de facto* 100% or no restriction return to work policy to Charging Party; and failed to reasonably accommodate Charging Party's impairment, which resulted in Charging Party being denied the opportunity to return to work.  Respondent also violated the ADA by refusing to permit Charging Party to enter the worksite to examine job postings, refusing Charging Party's requests to be transferred to other positions that he could have performed with reasonable accommodation, refusing to permit Charging Party to bid for other jobs that he could have performed, and refusing to permit Charging Party to enroll in the

company sponsored training for a commercial drivers license that would have qualified Charging Party to work for UPS as a tractor trailer driver. The evidence shows that Respondent did not even initiate its written ADA process until after Charging Party filed his Charge, and that Respondent still failed to reasonably accommodate Charging Party's disability when it did use its ADA process.

The evidence obtained by the Commission during its investigation has also shown that Respondent has continued to engage in a pattern or practice of discrimination by maintaining a *de facto* return to work policy requiring employees who were injured or have medical restrictions to be released 100% with no restrictions before being permitted to return to work. This policy has been determined to be a *per se* violation of the ADA. This policy has affected a class of covered individuals. In addition, evidence obtained during the investigation shows that Respondent maintains job requirements, including lifting requirements for feeder driver, yard shifter and other positions that are not essential to the position and discriminate against employees with disabilities. These job descriptions violate the ADA and affect a class of covered individuals. The Commission also obtained evidence during its investigation that Respondent has engaged in a pattern or practice of using its written ADA process in a discriminatory manner so as to deny reasonable accommodations to employees with disabilities. The Respondent's discriminatory application of its written ADA process violates the ADA and affects a class of covered individuals.

This determination is final. Section 107(a) of the ADA requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conciliation. Having determined that there is reasonable cause to believe that Respondent violated the ADA, the Commission now invites the parties to join with the Commission in reaching a just resolution of this matter. A representative of this office will be in contact with the parties in the near future to begin the conciliation process. Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute and Section 1601.26 of the Commission's procedural regulations. If Respondent declines to enter into a conciliation discussion, or when the Commission's representative for any other reason is unable to secure a settlement acceptable to the Commission, I will so inform the parties in writing and advise them of the court enforcement alternatives available to the Charging Parties, aggrieved persons, and the Commission.

On Behalf of the Commission:

Robert L. Sanders
Area Director

8-1-2007
Date



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

The Bourse, Suite 400
21 S. Fifth Street
Philadelphia, PA 19106-2515
PH: (215) 440-2620
TDD: (215) 440-2645
Fax215) 440-2604

Jennifer S. Kase
240 E. Penn Avenue
Cleona, PA 17042

Charging Party,

CHARGE NO.: 170-2005-00153

United Parcel Service
1821 S. 19th Street
Harrisburg, PA 17104

Respondent

## DETERMINATION

Under the authority vested in me by the procedural regulations of the Equal
Employment Opportunity Commission (EEOC), I issue the following determination as to
the merits of the above-cited charge, filed under The Americans with Disabilities Act of
1990 (ADA) and Title VII of the 1964 Civil Rights Act, as amended (Title VII).  The
timeliness and all other jurisdictional requirements for coverage have been
met.

Charging Party was hired by the Respondent on October 30, 1987 as a part-time clerk.
While employed by the Respondent, Charging Party received several promotions. The
last position that Charging Party held, prior to finding other employment, was a Security
Recovery Supervisor. Charging Party alleged that during her employment as a Security
Recovery Supervisor, she was harassed and treated differently because of her sex
(female). Charging Party further alleged that she was discriminated against because of

her perceived disability and retaliated against because she requested an accommodation. In 2004, Charging Party alleged that she had to take a medical leave of absence due to the discriminatory treatment she was receiving while employed in the Security Department. On September 6, 2004, Charging Party requested that she be permitted to return to work with accommodations. However, shortly thereafter Charging Party's short term disability benefits were stopped due to Respondents' false reports to the benefits administrator.

Respondent denies the allegations and contends that Charging Party was not discriminated against because of her sex or because of her alleged disability and/or retaliated against because she sought a reasonable accommodation.

The evidence secured during the investigation supports Charging Party's allegations that she was denied the opportunity to return to work because of her disability. A critical component of the ADA statute is offering a qualified individual with a disability a reasonable accommodation. In the instant case, Respondent did not offer Charging Party any type of accommodation. The record shows that the Charging Party was informed by letter dated July 13, 2004 that she had to return to work without any restrictions. Respondent's policy of directing Charging Party to return to work without any medical restrictions, is clearly a violation of the ADA for the Charging Party as well as any other class members adversely affected by the policy. With regard to Charging Party's allegations that she was harassed and/or treated differently because of her sex and/or retaliated against because she requested a reasonable accommodation, there was no evidence found to support those allegations.

Based on this analysis, I have determined that the evidence clearly establishes a violation of the ADA.   Upon finding that there is reason to believe that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of ths matter. In this regard, conciliation of this matter has now begun. Please be advised that any reasonable offer to resolve this matter will be considered. The Commission can seek an amount inclusive of full back pay (wage losses) with interest, plus compensatory damages, benefits and actual

monetary costs incurred by the Charging Party.  A Commission representative will prepare a demand for monetary relief, interest and other appropriate terms of relief. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject or submit a counteroffer to the conciliation proposal which will be forthcoming on behalf of the Charging Party.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the  Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved person and the Commission.

On Behalf of the Commission,

10/5/06

DATE

Marie M. Tomasso
District Director



0400?

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

DrS/AL/DB/JS/bk

John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203-0506
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Boston Status Line: (866) 408-8075
Boston Direct Dial: (617) 565-4805
TTY (617) 565-3204
FAX (617) 565-3196

CHARGING PARTY

Nestor Montoya
c/o Erin Green Comite
Scott + Scott, LLP
108 Norwich Ave.
P.O. Box 192
Colchester, CT  06415

RESPONDENT

United Parcel Service, Inc.
c/o Michael C. Harrington
Murtha Cullina LLP
CityPlace I, 185 Asylum Street
Hartford, CT  06103-3469

*Re:*   *Montoya v. United Parcel Service, Inc., Charge No. 161-2005-00732*

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge filed under the Americans with Disabilities Act of 1990 (ADA).

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him because of his disability in violation of the ADA in that Respondent failed to reasonably accommodate him.

Respondent denies the allegations and claims that Charging Party is not a qualified individual with a disability under the ADA and that it could not reasonably accommodate Charging Party due to his medical restrictions that restrict Charging Party from lifting up to 70 lbs.

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that there is a violation of the ADA. Charging Party is a qualified individual with a disability within the meaning of the ADA. Respondent improperly used uniform pretextual job descriptions listing lifting requirements as essential job functions when such lifting requirements were not essential job functions; failed to appropriately engage in the interactive process with the Charging Party as required by the ADA; applied a *de facto* 100% or no restriction return to work policy to Charging Party; and failed to reasonably accommodate Charging Party's impairment in a timely manner, which resulted in Charging Party being denied the opportunity to return to work from August 8, 2005 until on or about November 8, 2005. The evidence shows that Respondent did not even initiate its written ADA process until September 15, 2005, after Charging Party filed his Charge, and that Respondent still failed to reasonably

accommodate Charging Party's disability when it did use its ADA process until it finally permitted Charging Party to return part-time on or about November 8, 2005.

The evidence obtained by the Commission during its investigation has also shown that Respondent has continued to engage in a pattern or practice of discrimination by maintaining a *de facto* return to work policy requiring employees who were injured or have medical restrictions to be released 100% with no restrictions before being permitted to return to work. This policy has been determined to be a *per se* violation of the ADA. This policy has affected a class of covered individuals. In addition, evidence obtained during the investigation shows that Respondent maintains job requirements, including lifting requirements, for positions that are not essential to the position and discriminate against employees with disabilities. These job descriptions violate the ADA and affect a class of covered individuals. The Commission also obtained evidence during its investigation that Respondent has engaged in a pattern or practice of using its written ADA process in a discriminatory manner so as to deny reasonable accommodations to employees with disabilities. The Respondent's discriminatory application of its written ADA process violates the ADA and affects a class of covered individuals.

This determination is final. Section 107(a) of the ADA requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conciliation. Having determined that there is reasonable cause to believe that Respondent violated the ADA, the Commission now invites the parties to join with the Commission in reaching a just resolution of this matter. A representative of this office will be in contact with the parties in the near future to begin the conciliation process. Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute and Section 1601.26 of the Commission's procedural regulations. If Respondent declines to enter into a conciliation discussion, or when the Commission's representative for any other reason is unable to secure a settlement acceptable to the Commission, I will so inform the parties in writing and advise them of the court enforcement alternatives available to the Charging Parties, aggrieved persons, and the Commission.

On Behalf of the Commission:

SEP 2 7 2007
_____
Date

Robert L. Sanders
Area Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA  15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664


Jeffrey C. Nelson
607 North Third Street
Jeannette, PA 15644

      Charging Party

                                      Charge Number: 172-2006-00330
                                                (Amended)

United Parcel Service
521 North Center Service
New Stanton, PA 15672


## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met.  Charging Party alleged that the Respondent discriminated against him because of his disability by being denied a reasonable accommodation on or about May 24, 2005, by being laid off from his position of Pre-Loader on or about April 5, 2005, and by not being offered another position in lieu of his lay off, in violation of the Americans with Disabilities Act (ADA).  He further alleged that the Respondent's treatment of him results from its continuing application of corporate policies such as prohibiting employees from returning to work in any vacant position unless the employee can return to his/her last position without any medical restrictions.

The Respondent denies the allegations and defends that Charging Party, as a Pre-Loader, has a single restriction: pulling from the lower middle bins on the boxline.  Therefore, it asserts that he was denied a reasonable accommodation because he is not a qualified individual with a disability since his inability to perform such an occupation-specific task does not render him disabled under the ADA.

Specifically, Respondent asserted that Charging Party was employed as a Pre-Loader when he advised his supervisor on April 5, 2005, that he could not pull packages from the middle tier of the boxline because of his back  However, Respondent defends that Charging Party informed it that he had no medical restrictions and that he could do any other task other than pulling packages from the middle tier.  Meanwhile, Respondent states that Charging Party was advised

to leave for the day with instructions to contact its Human Resources Department the following day. On April 12, 2005, Respondent states that it received Charging Party's request for a job-related accommodation at which time it initiated its job-related accommodations process. However, it states that it was determined from the medical information provided from Charging Party's caregiver that he is not substantially limited in any major life activity and that his physical impairment does not substantially limit him from performing the position of Pre-Loader.

Examination of the evidence reveals that Charging Party had been performing the position of Pre-Loader since 2001 with a physical impairment until his removal on April 5, 2005. The investigation further revealed that Respondent was aware of his impairment and that he experienced difficulty when he was required to pull from the middle bins. However, when Charging Party informed Respondent on April 5, 2005, that he could not perform an assignment pulling from the middle bins, the Respondent sent him home with instructions to contact its Human Resources personnel and submit a request for a reasonable accommodation. Charging Party submitted his request for a reasonable accommodation along with the requested medical information. Upon review, the Respondent's personnel determined that he was not a qualified individual with a disability.

The investigation finds that Charging Party is not a qualified individual with a disability under the ADA. However, the Respondent states that it will not permit Charging Party to return to work until such time as he provides a medical release which states that he can perform the essential functions of his job. Meanwhile, the investigation reveals that the Respondent has informed Charging Party that he cannot return to work until he provides a doctor's release which states that he has no restrictions for duty or a 100% return to duty release. Thus, the investigation reveals that the Respondent maintains a "no restrictions" or "100%" return to work medical release policy which eliminates all persons who qualify under the ADA from returning to work.

Therefore, based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of the Americans with Disabilities Act (ADA) with respect to Charging Party's removal from the Pre-Loader position and the Respondent's failure to return him to said position by perceiving him to be a person with a disability. Furthermore, I have determined that the Respondent's "no restrictions" or "100%" return to work medical release policy is a "per se" violation of the ADA.

Upon finding that there is reason to believe that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission is seeking an amount inclusive of the applicable cap to your organization (up to and including $300,000) for compensatory and/or punitive damage; and actual monetary costs incurred by the Charging Party and aggrieved individuals, if any. A Commission representative will prepare and monitor an actual dollar amount to include accruing wage losses and attendant benefits, with interest to date, any appropriate front pay; and, if appropriate, attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If any offer has not previously been

Determination cont'd.                    3                    172-2006-00330

submitted, Respondent is requested to accept, reject, or submit a counteroffer to the enclosed conciliation agreement concerning Charging Party and any additional aggrieved individuals and do so within ten (10) days of the receipt of this letter.

The confidentiality provisions of the ADA and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On Behalf of the Commission:

_05/09/07_
Date

Joseph M. Hardiman, III, Area Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Mark P. Hohider
RD #2, Box 35
Scottdale PA 15683

        Charging Party,

CHARGE NO. 17F-A102049

United Parcel Service
521 North Center Avenue
New Stanton, PA 15672

        Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him by refusing to engage in the interactive process for determining a reasonable accommodation and refusing to reinstate him into a position which meets his medical restrictions, in violation of the Americans with Disabilities Act.

Respondent denied the allegations and stated that Charging Party is not a qualified individual with a disability under the act, and that he could not perform the essential functions of any positions in the company.

Examination of the evidence indicates Charging Party has been attempting to return to work with restrictions since February of 2001. It has been determined that the Respondent's light duty program is rehabilitative in nature. Employees having a limited prospect of recovery are not eligible to participate, which eliminates all persons who qualify under the ADA. Creditable Testimony has determined that Respondent has a 100% full medical release practice, which it has been determined is a per se violation of the ADA.

PL 000355

Letter of Determination (contd.)                    -2-                    Charge # 17F-A102049

When Respondent learned that Charging Party was the only candidate to fill a vacant position which met his medical restrictions, Respondent's policy and their rejection to select him for the position because of his medical restrictions support that Respondent perceived the Charging Party to be a person with a disability.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of the Americans with Disabilities Act.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of the statute(s) and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office director is not obtained, the director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission,

_____7/18/03_____

Date

Eugene V. Nelson, Director

PL 000357



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

William S. Moorhead Federal Building
1000 Liberty Avenue, Room 1112
Pittsburgh, PA  15222-4004
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Pittsburgh Status Line: (866) 408-8075
Pittsburgh Direct Dial: (412) 395-5902
TTY (412) 395-5904
FAX (412) 395-5749

Mark P. Hohider
R.D. 2, Box 35
Scottdale, PA 15683

V.

CHARGE NO.: 533-2007-01384

United Parcel Service
55 Glenlake Parkway Northeast
Atlanta, GA 30328

Respondent

## Determination

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. On February 20, 2007 Charging Party applied for a vacant Feeder Driver position which was advertised on line and any other available position. He asserts that Respondent failed to place him into the vacant Feeder Driver position or any other position because of his disability and/or in retaliation for filing a previous charge of discrimination (17F-2001-02049). He asserts that Respondent did not respond to his application letter in a timely manner and failed to engage in the interactive process to determine if an accommodation was possible. Charging Party responded promptly to all correspondence from the Respondent regarding his request to return to work and did not refuse any jobs offered to him. Charging Party contends that Respondent's actions are in violation of the Americans with Disabilities Act (ADA).

Respondent asserts that Charging Party provided conflicting testimony regarding his ability to work, in that, concurrent with his application for work in February 2007; a claim was ongoing regarding the cessation of his Worker's Compensation payments. On the one hand he asserted that he could work with or without an accommodation. On the other hand he asserted that he suffered from physical and psychological impairments that made him unable to work. Based on various medical evaluations and testimonies from Charging Party's doctors, Respondent concluded that the Charging Party was not a person with a disability based on the ADA definition because he did not meet his burden of showing that he had an impairment that substantially limited a major life activity. Respondent also concluded that the Charging Party was not able to perform the physical requirements of the Package Car Driver or Feeder Driver positions due to his medical restrictions and severe psychiatric problems.

Investigation revealed the following:

Charging Party is a person with a physical disability in that he is severely limited in his ability to lift, bend, squat, kneel, crawl, reach, climb stairs, and sit, among other activities. He also suffers from psychiatric disorders. Charging Party is able to perform the duties of several positions with or without an accommodation.

Six weeks after Charging Party found vacancies posted on line and requested to be placed in one of those positions or any other open position, Respondent informed him that the feeder driver positions were only temporary or seasonal. Respondent reminded the Charging Party that he was still on the Regular Temporary Package Driver Seniority List and that one of those positions was available for him. Charging Party notified Respondent in a letter dated April 9, 2007 that he felt it would be easier to accommodate him in a position other than the Package Driver position but stated he would be willing to allow the Respondent to try to accommodate him in that position. He also requested a list of other available positions.

Respondent failed to provide Charging Party with a list of other available positions and maintained that he was not able to perform the essential functions of the Feeder Driver/Package truck Driver due to his medical restrictions. However, Respondent failed to make a good faith effort to determine if an accommodation existed which would enable the Charging Party to perform the essential functions of either of those jobs. Respondent also failed to look at other available positions to see if an accommodation was possible. There was no meeting or direct discussion with the Charging Party to discuss his abilities or ideas for accommodations. Respondent states that the Charging Party rejected the offer to return to work as a Package Truck Driver but that is not the case. Moreover, Respondent interpreted the language in his medical evaluation literally in the manner most unfavorable towards returning the Charging Party to work without attempting to clarify the meaning of the restrictions.

Although Respondent contends that testimony from the Charging Party's psychiatrist demonstrates that the Charging Party is not able to work because of his psychiatric problems; that testimony was not intended to preclude him from ever returning to work or finding a reasonable accommodation and does not take into consideration the reasonable accommodation process.

Based on the above analysis, the EEOC concludes that a violation of the ADA has occurred with respect to the Respondent's failure to engage in the interactive process, failure to engage in genuine efforts to determine the Charging Party's status as a person with a disability, and failure to return him to work with or without an accommodation.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that any reasonable offer to resolve this matter will be considered. The Commission can seek an amount inclusive of the applicable cap to your organization for compensatory and/or punitive damage; and actual monetary costs incurred by the Charging Party and aggrieved individuals, if any. A

Commission representative will prepare and monitor an actual dollar amount to include accruing wage losses and attendant benefits, with interest to date, any appropriate front pay; and, if appropriate, attorney's fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject or submit a counteroffer to the conciliation proposal which will be forthcoming on behalf of the Charging Party.

The confidentiality provisions of the statute and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

You may contact investigator Susan M. Kelly to respond to the conciliation proposal. She can be reached at 412-395-5855.


01/12/09
Date

Joseph M. Hardiman, III
Area Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Robert J. DiPaolo
100 Stanton Drive
New Stanton PA 15672

Charging Party,

CHARGE NO.: 172-A300446

United Parcel Service
521 North Center Avenue
New Stanton PA 15672

Respondent.

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him by refusing to engage in the interactive process for determining a reasonable accommodation and refusing to reinstate him into a position which meets his medical restrictions, in violation of the Americans with Disabilities Act.

Respondent denied the allegations and stated that Charging Party is not a qualified individual with a disability under the act, and that he could not perform the essential functions of any positions in the company.

Examination of the evidence indicates Charging Party has been attempting to return to work with restrictions since May of 1998. Charging Party is a qualified individual with a disability within the definition of the Americans with Disabilities Act, in that he has an impairment that substantially limits his ability to care for himself, and he can perform the essential functions of some available jobs with or without a reasonable accommodation.

Letter of Determination (contd.)                  -2-                    Charge # 172-A300446

It has been determined that the Respondent's light duty program is rehabilitative in nature. Employees having a limited prospect of recovery are not eligible to participate, which eliminates all persons who qualify under the ADA. Creditable Testimony has determined that Respondent has a 100% full medical release practice, which it has been determined is a per se violation of the ADA.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of the Americans with Disabilities Act.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provisions of the statute(s) and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office director is not obtained, the director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission,

_____7/18/03_____

Date

_Eugene V. Nelson by R_

Eugene V. Nelson, Director



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Philadelphia District Office

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

Edward Ragusa
61-48 81ˢᵗ Street
Middle Village, NY 11379-1404

#### Charging Party

### CHARGE NUMBER: 160-2002-01609C

United Parcel Service
180 Canal Place
Bronx, NY 10461

#### Respondent

### DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him, in violation of the Americans With Disabilities Act of 1990, as amended (ADA), in that he was denied a reasonable accommodation in that he was assigned to positions which did not meet his medical restrictions. Respondent further alleges that he was told that if he was unable to work without restrictions he would be terminated. On April 15, 2002, Charging Party was discharged.

Charging Party was hired by Respondent in 1972 as a part time Un-loader. In late 1972, until the date of his discharge on April 15, 2002, Charging Party held supervisory positions. Between September 1, 2000 and December 31, 2000, Charging Party was employed as a Compliance Supervisor within the Respondent's Metro New York District. According to the Respondent, the duties Charging Party performed were basically clerical and not managerial and could be performed by clerical support personnel. In or around January 1, 2001, Charging Party was reassigned to the position of Local Sort Supervisor.

In March 2001, Charging Party sustained a back injury while lifting a package. Charging Party returned to work after a three week absence, with restrictions on his work hours, lifting ability and other manual tasks. Charging Party was placed on residual duty, performing limited tasks as a Local Sort Supervisor. Between August 8, 2001 and October 30, 2001, Charging Party was absent from work for further medical treatment. Respondent's Human Resources Manager Lamar Stockton allegedly told the Charging Party that if he was unable to do full work without restrictions by March 15, 2002, he would be terminated.

ERI-00040

On or about November 1, 2001 Charging Party returned to work on restricted duty and was temporarily assigned to the position of Compliance Specialist.

On March 10, 2002, Charging Party submitted documentation that he could resume full responsibilities, with the exception of repeated lifting of heavy packages. However, Respondent claims no Local Sort Supervisor positions were available in March 2002 and Charging Party was reassigned to the Pre-Load Supervisory position. Respondent claims that this position had similar duties that are performed by the Local Sort Supervisor. Charging Party provided medical documentation showing that as a result of his March 2001 injury, he remained unable to lift, pull or perform other manual tasks. Thus, Respondent placed Charging Party on a leave of absence.

On April 15, 2002, Lamar Stockton met with Charging Party to review his accommodation requests and offered him four positions which Charging Party declined due to his restrictions. Charging Party stated he could have filled the Preferred Customer Associate Supervisory position but it was not offered to him. On or about April 15, 2002, Charging Party was terminated from employment.

Respondent denies that it discriminated against the Charging Party and states that it discharged him because Charging Party's physician represented that he remained significantly restricted in his ability to perform manual tasks that were required for most of the available positions. Respondent further stated that Charging Party refused to accept reassignment to a position for which he was qualified that would have accommodated his disability.

With respect to placing Charging Party in the Preferred Customer Supervisory position, Respondent states that Charging Party was not qualified for this position because it was outside the Metro New York District and an employee can not be considered for an assignment in another District. Respondent argues that Charging Party could have applied for these positions but he would have had to resign his position within the District he was presently assigned to.

An analysis of the evidence shows that Respondent discriminated against the Charging Party. Respondent admits that it has a policy that requires an employee to return from leave and resume full responsibilities without restrictions. With respect to the Preferred Customer Supervisor position, Charging Party produced evidence to show this position was available from February 24, 2002 to March 24, 2002 while he was seeking accommodations. Instead, Respondent placed him in positions that were inappropriate and/or jobs that would dictate a significant cut in his salary.

Respondent contends that Mr. Stockman's comment to the Charging Party that he would be terminated if he was unable to return to work by March 15, 2002 without any restrictions, was stated with the sole intent of encouraging Charging Party to have a "speedy recovery." This defense is ludicrous; for such a remark is viewed as being intimidating and it is a prima facie violation of the ADA.

BRI-00041

Respondent's actions appears to be pretext for disability discrimination. An examination of the evidence shows that Charging Party returned to work with restrictions but was placed in positions that did not fully accommodate his disability. Respondent admits that it "allowed the Charging Party to return to work with an additional accommodation for his lifting restriction, "even though he did not satisfy the Respondent's Income Protection Policy's requirement that he be able to resume his full responsibilities without any restrictions." Respondent further states that "the Income Protection Policy may only be extended for a second 12-month period if an employee has returned to work for at least 30 days without restrictions.

Based upon the above, the Commission finds that Charging Party was discriminated against because of his disability and that Respondent's Income Protection Policy is also in violation of the ADA.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission is seeking an amount inclusive of the applicable cap to your organization for compensatory and/or punitive damages; and compensation for actual monetary losses incurred by the Charging Party and, if appropriate, attorney fees and costs which have accrued to date. Again the Commission is postured to consider any reasonable offer during this period.

A Conciliation Conference is scheduled for Wednesday October 20, 2004 at 10:00 a.m. at a mutually agreed upon location. A Conciliation Proposal is also attached for your review.

The confidentiality provisions of the statute and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On Behalf of the Commission,

September 30, 2004
Date

Marie M. Tomasso
District Director

cc:    Tracey I. Levy, Esquire (for Respondent)
       Kathleen Peratis, Esquire (for Charging Party)

ERI-00042



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Phoenix District Office

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
(602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

Charge No. 350-2005-01018

Mark Sanchez                                              Charging Party
12612 N. 112th Ave.
Youngtown, AZ 85363

United Parcel Services                                   Respondent
3150 North 31st Ave.
Phoenix, AZ 85017

# D E T E R M I N A T I O N

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of the Americans with Disabilities Act of 1990 (ADA). Timeliness and all other requirements for coverage have been met.

Charging Party alleged that he was discriminated against in violation of the ADA in that Respondent failed to accommodate him or allow him to return to work because he could not do so without restrictions. Charging Party further alleged that he needed a 100% release with no restrictions to return to work, and that Respondent continues to retaliate against him by refusing to accommodate him.

I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that there is a violation of the ADA . Charging Party is a qualified individual with a disability. Respondent (1) failed to engage in the interactive process with the Charging Party as required by the ADA , (2) required him to be "100 percent" fit for duty, and (3) failed to reasonably accommodate Charging Party's impairment, which resulted in Charging Party being placed on an unpaid medical leave of absence. Like and related to this, the Respondent did not allow Charging Party to return to work after January 2005 to a route which he bid on, was qualified to perform and which his seniority qualified him for.

Like and related to the above, the record of evidence has also shown that Respondent has continued to engage in a pattern and practice of employment discrimination by maintaining a de facto return to work policy requiring employees who have permanent restrictions to be released 100% with no restrictions before returning to work. This policy has been determined to be a per se violation of the ADA. This policy has affected a class of covered individuals. In addition, Respondent maintains job requirements, including lifting requirements for feeder driver and other positions which are not essential to the position and discriminate against disabled employees.

This determination is final.  When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter.  Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the confidentiality provisions of the ADA and Commission Regulations.

If the Respondent wishes to accept this invitation to participate in conciliation efforts, it may do so at this time by proposing terms for a conciliation agreement.  Those terms should be provided to the Commission representative, Reinaldo Lugo, Investigator, at (602) 640-5018 within fourteen days of the date of this determination.  The remedies for violations of the statutes we enforce are designed to make the identified victims whole, and to provide corrective and preventative relief.  These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation(s) and the resolution of the charge.

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage it to contact the assigned Commission representative.  Should there be no response from the Respondent within fourteen days, we may conclude that further conciliation efforts in this matter would be futile or non-productive.

On behalf of the Commission:

SEP 2 8 2006

Date

Chester V. Bailey
District Director